## Fayette County et al. v. Hill.

April 29, 1947.

Chester D. Adams, Judge.

622

Wm. A. Minihan, R. P. Moloney and Paul Mansfield for appellants.

R. W. Keenon, Robert M. O'Dear and James Park for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

On May 14, 1945, Sylvester Kiger, a member of the county patrol of Fayette County, received a radio call from the chief of the county police directing him to go to the Green Tree Farm on U. S. Highway 68, six miles north of Lexington. A workman had fallen into a tank which was being painted and had been overcome by fumes. Kiger was in a county police car at the Fair Grounds on south Broadway in Lexington when the message was received at 12:34 p. m., and, accompanied by another county policeman, he started north on Broadway and at the intersection of Broadway and Maxwell Streets his police car collided with a bus owned by James Hill, who was doing business as Cooper Bus Lines. The county police car and the bus were damaged, and Ervin Riley, driver of the bus, and the two county policemen were injured. James Hill instituted suit against Fayette County and Sylvester Kiger for his property damage, and Ervin Riley brought suit against the same defendants for his injuries. Sylvester Kiger filed a counterclaim in these suits for his injuries, and Fayette County brought an independent suit against James Hill for the property damages to its police car. The cases were tried together in the Fayette circuit court. The jury returned a verdict in favor of James Hill, doing business as Cooper Bus Lines, for $1,726.05, and a verdict in favor of Ervin Riley in the sum of $200 against Fayette County and Sylvester Kiger. The jury also

returned a verdict in favor of the defendant James Hill in the suit brought by Fayette County. The claim of Sylvester Kiger was disallowed. The suit against Fayette County was brought pursuant to KRS 67.180, which permits the County to be sued and a judgment obtained against it to measure the liability of the insurance carrier to the injured party. This is an appeal from the judgment in favor of James Hill, doing business as Cooper Bus Lines.

The sole ground urged for reversal of the judgment is alleged error in the instructions. It is appellant's contention that the trial court, in its instructions, ignored the statutory provisions relating to emergency vehicles.

The appellant Sylvester Kiger was driving a patrol car owned by Fayette County. He testified that upon receipt of the emergency call he started to the Green Tree Farm, and proceeded from the Fair Grounds northwardly on south Broadway for a distance of six or seven blocks to Maxwell Street, which intersects Broadway. The police car was equipped with a siren, such as is ordinarily used on emergency vehicles, and Kiger testified that this siren was sounded continuously as the police car proceeded north on Broadway. The car traveled at a speed of approximately 40 miles an hour. A traffic light was in operation at the intersection of Broadway and Maxwell Streets, and it is conceded that the bus had the green light when it entered the intersection and the light was red against the patrol car. Ervin Riley, driver of the bus, testified that he left the Greyhound Bus Station on Main Street in Lexington at 12:30 p. m., with twelve or thirteen passengers, proceeded south on Rose Street to Maxwell Street, and west on Maxwell to Broadway. As he approached the intersection at a speed of 15 to 18 miles an hour, the traffic light changed from red to green and he proceeded into the intersection intending to cross Broadway and continue west on Maxwell. A grocery store on the southeast corner of Broadway and Maxwell Streets, which stands flush with the sidewalk on Broadway, obstructed his view to the south on Broadway until the bus was entering the intersection. The weather was warm, and the windows of the bus were open. Riley and several passengers on the bus testified that they did not hear the siren prior to the time the bus entered the in-

tersection. Riley stated that when he first heard the siren the bus was ten or fifteen feet in the intersection, and the patrol car was seventy-five or eighty feet away traveling between 50 and 60 miles an hour. The collision occurred in a closely built up business section of the city where the traffic was heavy.

KRS 189.080 provides that any authorized emergency vehicle may be equipped with a siren capable of emitting sound audible under normal conditions from a distance of not less than five hundred feet, but to be used only when the vehicle is operated in response to an emergency call or in the immediate pursuit of an actual or suspected violator of the law, in which event the driver shall sound the siren when necessary to warn pedestrians and other drivers of the approach of the vehicle. Subsection (1) of section 189.390 of the Kentucky Revised Statutes provides in part:

"(1) No operator of a vehicle upon a highway shall drive at a greater speed than is reasonable and prudent, having regard for the traffic and for the condition and use of the highway; but:

"(a) Where a highway passes through a closely built-up business portion of any city, if the rate of speed of motor vehicles on the highway exceeds twenty miles per hour, it shall be prima facie evidence of unreasonable and improper driving."

Subsection (4) (a) of section 189.390 provides:

"Subsection (1) shall not apply to vehicles owned and operated by the fire, police or hospital departments of any city."

Instruction No. 1 given by the court told the jury that:

"It was the duty of the defendant, Sylvester Kiger, before proceeding against the red traffic signal at Broadway and Maxwell to slow down the car he was driving to the extent necessary for the safe operation thereof; to operate said automobile at no greater rate of speed than was reasonable and proper having regard for the use of the highway at the time and place referred to in the evidence, and to exercise ordinary care generally to prevent colliding with pedestrians and other vehicles on the highway, including the bus of the defendant."

Instruction No. 2 reads:

"If you believe from the evidence that Sylvester Kiger was driving the County Police car at a speed of more than twenty miles per hour, such speed is prima facie evidence of negligence on his part, unless you believe that considering the circumstances, including the fact that he was driving an emergency vehicle, and the condition and use of the street that a greater speed was reasonable and proper, in which event he could exceed the prima facie speed limit so long as he did not endanger life or property."

Instruction No. 3 set out the duties of Ervin Riley, driver of the bus. Aside from the statutory duties ordinarily applicable to the driver of a motor vehicle in a situation similar to the one here involved, the instruction imposed this duty on the driver of the bus:

"And the Court further instructs the jury that if the said Riley as he approached the intersection of Maxwell Street and Broadway heard or by the exercise of ordinary care could have heard the signal by siren of the police cruiser, if said siren was sounded, at a time when he was a sufficient distance from the intersection to have brought his bus to a stop before reaching the point of collision, then it was Riley's duty to yield the right-of-way at said intersection to the said police cruiser regardless of the traffic lights on the semaphore at said intersection; and the said Riley had the duty to immediately drive his said bus to a position parallel to and as close as possible to the right-hand edge or curb of the street, clear of the intersection, and to stop said vehicle and remain in such position until the said police cruiser, operated by Kiger had passed, if he heard or by the exercise of ordinary care could have heard said siren in time to do so."

Thus the court qualified the standard instruction on the duties of the driver of an automobile by requiring the driver of appellee's bus to grant the right of way to the emergency car if the siren was sounded and he heard or by the exercise of ordinary care could have heard it. It is appellants' theory that subsection (4) (a) of section 189.390 of the Kentucky Revised Statutes exempts a county patrol car while on an emergency call from the observance of the statutory speed laws of the state,

and that the court erred in making the statutory speed limit applicable to county police cars. It is argued that subsection (4) (a) was intended to apply to all emergency vehicles owned by a governmental agency whether a city, county, school district or other subdivision of the state, and that a construction of the statute limiting the exemption therein provided to city owned emergency vehicles would create an absurdity. Subsection (1) of KRS 189.390 prescribes the maximum rate of speed under various conditions at which vehicles may be driven, and except for subsection (4) (a) its provisions apply to all operators. Subsection (4) (a) provides that subsection (1) shall not apply to vehicles owned and operated by the fire, police or hospital departments of any city. This language is clear and unambiguous. A statute is not open to construction unless it is ambiguous and will bear two or more constructions. As was said in Commonwealth v. International Harvester Co., 131 Ky. 551, 115 S. W. 703, 706, 133 Am. St. Rep. 256:

"In construing a statute, the aim is of course to arrive at the legislative meaning. The first, and most important, rule is to resort to the language of the act itself, and that language alone, to gather the legislative purpose, if the language used is unambiguous. It is not allowable, in such state of case, to resort to any other source of information to learn what the lawmaking department intended, or as to what evils they proposed remedying."

It is only where a statute is ambiguous and fairly susceptible of two constructions that the absurdity which may follow one construction or the other may properly be considered. When the language of a statute is free from ambiguity, the exact language thereof should be followed. Hurry Up Broadway Co. v. Shannon, 267 Ky. 302, 102 S. W. 2d 30. Appellant would have us construe the word "city" in subsection (4) (a) of KRS 189.390 as including counties. This we are not authorized to do. There is nothing in the Act as a whole tending to indicate that the Legislature intended the exemptions from the provisions of subsection (1) to apply to vehicles other than those "owned and operated by the fire, police or hospital departments of any city." In O'Neil & Hearne v. Bray's Adm'x, 262 Ky. 377, 90 S. W. 2d 353, 355, a privately owned ambulance was in-

volved in an accident while on an emergency call, and it was contended that the provision exempting a municipally owned ambulance from the application of the speed laws of the state should be construed as including privately owned ambulances engaged in the same service as municipally owned ambulances answering emergency calls. The court declined to so construe the act, and said: "We are not authorized to read into the statute something that is not there." Cf. Thomas v. Dahl, 293 Ky. 808, 170 S. W. 2d 337; Fayette County v. Martin, 279 Ky. 387, 130 S. W. 2d 838.

We think the instructions given by the court adequately defined the rights and duties of the respective parties, and the judgment is accordingly affirmed.