RENDERED: APRIL 23, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0693-MR

RICKY RAY DOWNEY                                                      APPELLANT

v.                   APPEAL FROM HENRY CIRCUIT COURT
                     HONORABLE KAREN A. CONRAD, JUDGE
                     ACTION NO. 16-CI-00143

RICHARD JAEHNIGEN                                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  JONES, LAMBERT, AND K. THOMPSON, JUDGES.

LAMBERT, JUDGE:  Ricky Ray Downey appeals from the Henry Circuit Court's order granting summary judgment to Richard Jaehnigen on Downey's claim for excessive use of force.  Downey argues that the circuit court erred in finding that Jaehnigen was acting in his capacity as constable when the incident occurred and that the circuit court's award of summary judgment was erroneous.  We affirm.

We begin by repeating the facts and procedural history as stated by the circuit court in its April 12, 2019, order:[1]

> This matter is before the Court on Defendant's renewed Motion for Summary Judgment following second deposition of Herman Moore, witness for [Downey].
>
> Two depositions have been taken of Mr. Herman Moore. The first in 2017 and the second in 2018 after the Court declined to grant Summary Judgment to [Jaehnigen] based upon a lack of clarity from [Downey's] eye witness who is his neighbor Herman Moore, residing across the street from [Downey] and who indicated he was on the porch at the time the incident involving the injury to Mr. Downey occurred.
>
> In a previous order signed by this Court on June 7, 2018, the Court had noted that Mr. Moore's first deposition presented questions as to whether Defendant Jaehnigen's actions were committed in good or bad faith and whether he acted within the scope of his authority, and whether he was negligent.
>
> As pointed out by [Jaehnigen] in his renewed Motion for Summary Judgment, in a situation where a claim is made against an officer for excessive force, negligence is not an issue. There is no doubt that there is force used, the question is whether it was too much force for the situation which was presented.

---

[1] Downey's complaint, filed in 2016, named the following defendants: Henry County Fiscal Court; Henry County EMS; Henry County Judge Executive (John Logan Brent); Henry County Magistrates (Scott Bates, Rickey Timberlake, Jason Stanley, Tony Moffett, Michael Fisher, and Jerry Beasley); and Jaehnigen, in his official and individual capacities. The circuit court granted summary judgment in 2018, to all defendants except Jaehnigen but ruled that Jaehnigen was acting in his capacity as constable on the date of the incident. Downey's appeal here is from the order granting Jaehnigen's second motion for summary judgment.

The Court does not repeat the facts except to say that the injury to Mr. Downey occurred when the Defendant Mr. Jaehnigen returned to the scene following an earlier call to EMS. Mr. Jaehnigen, who is an EMT, responded to that call and he as well as the police, who were also called, left after a few minutes. The call had been placed by Mr. Downey's son Jason pertaining to Mr. Ricky Downey's behavior, which included intoxication. After the police and EMT Jaehnigen and the ambulance left, another call came in, this time only for the police. Mr. Jaehnigen was at a convenient store/gas station when the call came in[,] and he asked Officer John Wilson, who was going to respond to the call, if he needed back up or assistance. [Jaehnigen] did not ride in the same vehicle with [Officer] Wilson but rather drove the vehicle he had at the service station.

Previously, this Court determined that on the second visit when Mr. Jaehnigen was present, he was not there in his capacity as an EMT since there was no call for one. Rather, he went to assist the police and the Court notes that as an elected constable with powers of arrest, he was there to act as "back-up" for the responding officers. The Court has recently overruled a motion to alter, amend or vacate its Order finding that Mr. Jaehnigen was there in his capacity as a constable when the injury occurred.

The police witnesses as well as Mr. Jaehnigen testified that on the second visit, Officer Wilson was standing in the front yard talking to Ricky Downey's son Jason when from around the corner behind Officer Wilson, Ricky Downey came running with a metal pole toward the two men.

The Defendant Jaehnigen had been standing back watching the scene as was his custom when assisting or providing back-up only to police. Per his statement and deposition, he heard Mr. Downey state he was going to "f-ing kill you" and thought he meant Officer Wilson.

-3-

He immediately stepped out and lowered his shoulder in [a] "tackle" sort of move which knocked Mr. Downey to the ground and Mr. Jaehnigen fell on top, causing Mr. Downey's leg to break.

Deputy Keith Perry was present[,] and he stated that the situation of Mr. Downey charging with a metal pole toward Officer Wilson and Mr. Downey's son screaming "I'm going to f-ing kill you" merited the use of deadly force, meaning the police would have been justified in shooting Mr. Downey.

In this suit, Mr. Downey has claimed that Defendant Jaehnigen used excessive force.

Herman Moore claimed to be an eyewitness from his front porch. In his first deposition, he stated that he saw the incident with Mr. Jaehnigen and Mr. Downey and saw Mr. Downey go down. He states that there was fighting going on on the porch when [Jaehnigen] threw down Mr. Downey, and then the fighting stopped. [Moore] further claimed that Mr. Downey was not screaming that he would kill someone until after he was down on the ground. There was another witness who also states this to be his recollection. The Defendant Jaehnigen as well as Deputy Perry and Officer Wilson all state that Mr. Downey was screaming about killing someone as he ran toward Wilson and Jason Downey.

Mr. Moore in his first deposition gives no detail about whether [Downey] was running with a metal pole at Officer Wilson and Mr. Downey's son Jason.

Mr. Moore gave a second deposition following the Court's denial of summary judgment based upon lack of clarity in the testimony. In the second deposition he states that he did not see the incident with [Downey] and Defendant Jaehnigen where [Downey] landed on the ground. In fact, he also stated he had no recollection of giving a prior deposition but stated in response to

[Downey's] counsel that whatever he said in that deposition was true.

Jaehnigen contends that the second deposition testimony demonstrates that Mr. [Moore] is incompetent so that he may not even testify at trial. [Downey] argues it is a question of credibility for the jury when two depositions have differing statements.

This Court holds that it does not matter if Mr. [Moore] is incompetent because [Downey] can use the first deposition at trial so long as a witness is unavailable for trial. In the event Mr. [Moore] were to be deemed incompetent, he would be therefore "unavailable" for trial and the first deposition stating that he actually saw the incident could be used.

In this case, it makes no difference based upon this Court's holding that [Downey] cannot meet his burden of proof.

First, there is no dispute that the actions of [Jaehnigen] resulted in [Downey's] falling to the ground. It may be that Mr. Moore chooses to call it throwing him to the ground, and [Jaehnigen] chooses to call it tackling him. The question is the use or not of "excessive force" for which [Downey] bears the burden of proof.

[Jaehnigen] has presented more than sufficient evidence be it depositions of [Jaehnigen's] Officer John Wilson and Deputy Keith Perry as well as his own deposition as to the nature of [Downey's] actions in "charging" Officer Wilson and Jason Downey, and screaming his intent to kill. As the officers testified, the use of deadly force was warranted. [Downey] has not presented any testimony that overcomes this, and it is [Downey's] burden to demonstrate [Jaehnigen] used more force than was necessary given the situation.

[Downey] has failed in this burden. His "eyewitness" Herman Moore, who says he saw [Jaehnigen] "throw down" [Downey], does not contradict or rebut the testimony that, given the circumstances, the use of deadly force would have been warranted. As such, [Downey] is unable to meet his burden to demonstrate this was a case where excessive force was used. A "tackle" to stop [Ricky Downey's] charge of Wilson and Jason Downey is certainly far less force than shooting to kill. Similarly, throwing a person charging with a metal pole to the ground is also far less force than shooting to kill.

Given this lack of evidence by [Downey], the Court cannot see how [Downey] can prevail given his burden to show the force used by [Jaehnigen] was unwarranted and excessive.

As such, the Court further finds that Richard Jaehnigen, as a Constable, acted within the scope of his authority, and acted in good faith in that there is absolutely no showing he intended to do anything other than prevent an injury due to Mr. Downey's action on that evening while charging with a metal pole. The Court hereby grants Summary Judgment to the Defendant Richard Jaehnigen and dismisses this case, with prejudice.

We next enunciate our standard of review of an order granting summary judgment:

Our standard of review in an appeal from a summary judgment is well-settled in the Commonwealth. "The standard of review on appeal when a trial court grants a motion for summary judgment is 'whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law.'" *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001), *citing*

-6-

*Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996); *Palmer v. International Ass'n of Machinists & Aerospace Workers*, 882 S.W.2d 117, 120 (Ky. 1994); [Kentucky Rules of Civil Procedure] CR 56.03. "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Lewis,* 56 S.W.3d at 436, *citing Scifres*, 916 S.W.2d at 781; *Estate of Wheeler v. Veal Realtors and Auctioneers, Inc.*, 997 S.W.2d 497, 498 (Ky. App. 1999); *Morton v. Bank of the Bluegrass and Trust Co.*, 18 S.W.3d 353, 358 (Ky. App. 1999). With this standard in mind, we shall review the judgment on appeal.

*City of Brooksville v. Warner*, 533 S.W.3d 688, 692 (Ky. App. 2017).

Kentucky courts have repeatedly stated, and we continue to adhere to these bedrock principles, that summary judgment is an extraordinary remedy, it is to be "cautiously applied[,]" and it "should not be used as a substitute for trial." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 483 (Ky. 1991). "The trial court must review the evidence, not to resolve any issue of fact, but to discover whether a real fact issue exists." *Shelton v. Kentucky Easter Seals Soc'y*, 413 S.W.3d 901, 905 (Ky. 2013) (footnote omitted). This requires both the trial court and this Court to review the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest*, 807 S.W.2d at 480.

*Joiner v. Kentucky Farm Bureau Mutual Insurance Company*, 582 S.W.3d 74, 77-78 (Ky. App. 2019). Here, the facts must be viewed in a light most favorable to Downey. *Id.* at 78.

We first address Downey's claim that it was an issue for the jury to decide whether Jaehnigen was acting in his capacity as a constable/peace officer when he returned to Downey's residence on July 25, 2015. In this vein, Downey also claims as error the circuit court's ruling which excluded Downey's proffered expert testimony regarding emergency medical services (on the basis that Jaehnigen was not acting as an EMT but rather as a constable).

We decline to address substantively this aspect of Downey's argument because we agree with Jaehnigen that it is not properly before us. Downey contends, in his preservation statement pursuant to CR 76.12(4)(c)(v), that the issue was preserved "upon filing of Appellant's Motion to Reconsider the court's June 7, 2018 and August 6, 2018 Orders." However, as Jaehnigen points out, Downey's notice of appeal (as well as the appendix to his corrected brief before this Court) only references the circuit court's April 12, 2019, order granting summary judgment to Jaehnigen. *See* CR 73.03 and 76.12(4)(c)(vii). Downey failed to attempt to remedy these omissions or address Jaehnigen's assertions by filing a reply brief. CR 76.12(2)(a).

Downey next contends that the circuit court erred in granting summary judgment because genuine issues of material fact remained regarding whether Jaehnigen used excessive force in tackling Downey. Downey insists that

two witnesses' deposition testimony would have supported his theory regarding the issue of excessive force. Downey himself had no memory of the incident.

The circuit court considered those depositions in its determination that excessive force could not be proven by Downey. "[T]he party opposing summary judgment [must] present 'at least some affirmative evidence showing that there is a genuine issue of material fact for trial.'" *Lewis v. B & R Corporation*, 56 S.W.3d 432, 436 (Ky. App. 2001) (citing *Steelvest*, 807 S.W.2d at 482) (other footnoted citations omitted). It was incumbent upon Downey to present such evidence, and he failed to meet that burden.

Hence, the order of the Henry Circuit Court is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Steven R. Romines
Louisville, Kentucky

BRIEF FOR APPELLEE:

Carol S. Petitt
Kyle M. Vaughn
Pewee Valley, Kentucky